NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KINGSLEY ONUCHUKWU, ) <br> ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ST. PETER'S UNIVERSITY ) <br> HOSPITAL, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No.: 05-cv-966 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

Plaintiff Kingsley Onuchukwu, brings this pro se action against his employer, Defendant St. Peter's University Hospital (hereinafter "Defendant" or "SPUH"), alleging harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Presently, Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This motion is resolved without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendant's motion for summary judgment is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a Nigerian-born male, has been an employee with Defendant SPUH from 1997 until the present. (Def.'s Statement of Undisputed Material Facts ("SOF"), ¶ 1). Plaintiff was first employed as a Transport Aide, and was promoted to the position of Pharmacy Technician in

2000.  (Id. ¶ 2).  At the time, Plaintiff was the only Nigerian-born employee working in the SPUH pharmacy department.  (Def.'s Ex. A).  Plaintiff remained in that position as a full-time employee until August of 2004.  (Def.'s SOF ¶ 3).  Plaintiff claims that he has been the target of repeated harassment and discrimination in the workplace due to his national origin.  He also alleges that his employer retaliated against him and failed to promote him due to his previous complaints of harassment.

     Plaintiff was officially certified as a Pharmacy Technician with SPUH in November of 2000.  At that time, Plaintiff applied under a newly instituted "certification pay" program, which entitled him to an additional two dollars per hour in compensation.  (Def.'s SOF ¶ 11).  When he received the additional pay in January 2001, Plaintiff noticed that it was issued separately from his base pay.  (Id. ¶ 13).  Around this time, Defendant also hired three Caucasian female pharmacy technicians, who were also eligible for the "certification pay" program.  (Id. ¶¶ 14-15).  However, unlike Plaintiff, these new employees received one pay check that included the certification pay with their original base pay.  (Id. ¶ 16).  Plaintiff brought this discrepancy to the attention of John Dimatteo, an SPUH pharmacy manager, and John Grangeia, Dimatteo's supervisor.  (Id. ¶ 17).  The failure to incorporate the certification pay into the base pay, as explained by Plaintiff, could effect his annual salary increase because the increase is calculated based on the amount of reported base pay.  (Def.'s Ex. B-2, Onuchukwu Dep. T:93).  SPUH's Assistant Vice President of Professional Services, Anthony Costabile, subsequently issued a memo to "All Technicians," in which he apologized for the inconsistencies in the certification pay program.  (Def.'s Ex. C).  The issue was resolved the following month, when the additional

certification pay was issued separately from all base pay. (Def.'s Ex. B-2, Onuchukwu Dep. T:91).

Several months later, fourteen pharmacy technicians at SPUH, including Plaintiff, signed a petition expressing their dissatisfaction with the level of compensation the technicians received in proportion to the increase in job responsibilities. (Def.'s Ex. D). SPUH's Vice President of Human Resources, Paula Dean, responded to the petition with a letter directed to Plaintiff, acknowledging the issue, but declining to offer a pay increase to the technicians. (Id. Ex. E). Plaintiff contends that from this point forward, he began to be subjected to harassment at work by Ben Dobrzynski ("Dobrzynski"), a senior pharmacy technician and Plaintiff's immediate supervisor.

First, Plaintiff alleges that between 2001 and 2002, Dobrzynski allegedly harassed Plaintiff by asking Plaintiff how long was he "living here," and on "numerous occasions where do you come from?" (Def.'s Ex. A at 1; Pl.'s Br. in Opp. at 4). Plaintiff cannot recall the exact dates or times the comments were made, stating only that Dobrzynski made them on "numerous occasions" and a "couple of times" between 2001 and 2002. (Def.'s Ex. A; Def.'s Ex. B-2, Onuchukwu Dep. T:117).

In addition to the alleged comments, Plaintiff contends that Dobrzynski intentionally modified a medication label to harass Plaintiff. On September 20, 2003, Plaintiff was working the evening shift in the SPUH pharmacy, completing prescriptions with printed labels. Plaintiff discovered a misspelled label on the outside of a bottle of Ichthammol ointment – commonly referred to as "Black Salve." (Def.'s SOF ¶¶ 52-54). Plaintiff noticed that one of the labels read, "ICHTHANOL OINT (BLACK SLAVE)." (Def.'s Ex. F). Plaintiff was upset by this, and gave

the label to Stanley Werther, the night pharmacist, who advised Plaintiff that he would resolve the problem. (Def.'s SOF ¶ 56). Plaintiff maintains that Dobrzynski was the sole employee responsible for entering the medicine labels into the SPUH pharmacy database. (Def.'s Ex. B-2, Onuchukwu Dep. T:110-111). Plaintiff concedes, however, that he did not know whether the printing on the label was intentional or a typographical error. (Def.'s Ex. B-2, Onuchukwu Dep. T:114).

Finally, Plaintiff contends that Dobrzynski mistreated Plaintiff on November 23, 2003, when he allegedly yelled at Plaintiff to complete a medication chart. That day, Dobrzynski was expecting a visit from an inspector from the New Jersey Department of Health. Dobrzynski noticed that a refrigeration temperature graph located in the SPUH pharmacy was not completed. (Def.'s SOF ¶ 34). The graph served to provide a daily record of the temperature where medication was stored, to ensure that patients' prescriptions were maintained at specific, stabilized temperatures that would not alter the effects of the medicine. (Def.'s Ex. B-2, Onuchukwu Dep. T:123). Dobrzynski requested that Plaintiff complete the remaining portions of the graph. (Def.'s SOF ¶ 34). When Plaintiff refused to enter the temperatures on the chart for the days when he did not work, Dobrzynski became "upset," and "kept asking [Plaintiff] to do it, forcing [Plaintiff] right now, right now, right now." (Def.'s Ex. B-2, Onuchukwu Dep. T:133-134). The encounter lasted approximately 5 to 6 minutes, and Dobrzynski did not make the request again. (Id. T:134). Plaintiff complained about the incident to Jeanne Mulkeen, of SPUH's human resources department, and requested that management speak with Dobrzynski. (Def.'s Ex. B-2, Onuchukwu Dep. T:136). Plaintiff did not speak to Dobrzynski about the incident again. (Id. T:137).

Additionally, Plaintiff maintains that there were instances where he was not promoted because of his prior complaints to human resources. (Def.'s Ex. A). First, in January 2004, Plaintiff applied for the position of "Operating Room Materials Specialist" at SPUH. (Def.'s SOF ¶¶ 62-63). Plaintiff was not offered the position. Instead, Defendant hired Maurice Ramsey, who worked at another hospital in a very similar position since 1997. (Def.'s Ex. J; Ex. K, Maimone Aff. ¶ 5). Next, Plaintiff applied for the position of "Pharmacy Buyer" at SPUH in the Spring of 2004. (Def.'s SOF ¶ 69). However, this position was filled by Michelle Karagiannakis, who had previously worked as a pharmacy buyer since 1998 at another hospital. (Id. ¶ 73; Ex. L). Plaintiff admits to having limited experience in the "buyer" position. (Def.'s Ex. B-1, Onuchukwu Dep. T:15-16). Further, Plaintiff was unaware of the background or qualifications of either of the two successful candidates. (Def.'s Ex. B-1, Onuchukwu Dep. T:34).

On March 8, 2004, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting claims of harassment and retaliation based on his national origin, in violation of Title VII of the Civil Rights Act of 1964. (Def.'s Ex. A). The EEOC issued a right-to-sue letter on January 7, 2005. (Id.). Plaintiff then filed a Complaint with the Court on February 17, 2005, claiming "non-promotion due to previously filed complaints," and "retaliation by vice-president and supervisor." (Compl. ¶¶ 9-10). In the Complaint, Plaintiff identified both race and national origin as a basis for his claims. (Compl. ¶ 10). During a subsequent deposition conducted on October 7, 2005, however, Plaintiff clarified that his claims are based on national origin, not race. (Def.'s Ex. B-2, Onuchukwu Dep. T:49). Plaintiff is

currently employed by Neighbor Care Pharmacy Services in Edison, NJ, but continues to work weekends for SPUH on a per diem basis. (Def.'s Ex. B, Onuchukwu Dep. T:17).

Defendant presently moves for summary judgment against Plaintiff pursuant to Federal Rule of Civil Procedure 56(c), on all claims of Plaintiff's Complaint.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999). Instead, the nonmoving party must "present

affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

## DISCUSSION

### A.   Harassment under Title VII

Plaintiff's harassment claim under Title VII seems to be grounded in several incidents of alleged harassment by Plaintiff's direct supervisor, Ben Dobrzyinski. Section 2000e-2 of Title 42 of the United States Code provides, in pertinent part:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin….

42 U.S.C. § 2000e-2 (a)(1). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). Where a plaintiff is relying on indirect or circumstantial evidence, Title VII harassment claims are evaluated in accordance with the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and then elaborated in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). As described by the Court in Burdine:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden [of production] shifts to the defendant to articulate some legitimate, non-discriminatory reason for the [adverse employment decision]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that legitimate reasons offered by the defendant were not his true reasons, but were a pretext for discrimination.

Burdine, 450 U.S. at 252-53.

The exact elements necessary to establish a prima facie case under Title VII can vary based on the particular facts of the case. McDonnell Douglas, 411 U.S. at 802, n. 13. Generally speaking, to advance a prima facie case of harassment under Title VII, a plaintiff must show that "(1) he suffered intentional discrimination because of his [national origin]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996)). See also Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 276-77 (3d Cir. 2001) (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)). The harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal quotations omitted). Moreover, the court must look at the "totality of the circumstances" in ascertaining whether there is a hostile work environment. West, 45 F.3d at 753. Viewing Plaintiff's Complaint liberally, Plaintiff appears to rely upon three separate incidents of alleged harassment by Dobrzynski to form the

basis of his Title VII harassment claim.  These incidents are: (1) the alleged "where do you come from" comments by Dobrzynski in 2001 and 2002; (2) the misspelled medication label; and (3) the encounter with Dobrzynski concerning the refrigeration temperature graph.[1]  (Def.'s Ex. A). Each will be addressed in turn.

Plaintiff alleges that between 2001 and 2002, Dobrzynski asked Plaintiff "how long" was Plaintiff "living here," and on "numerous occasions where do you come from?"  (Def.'s Ex. A at 1; Pl.'s Br. in Opp. at 4).  Plaintiff does not recall exact dates or times, stating only that these exchanges happened on "numerous occasions" and a "couple of times" between 2001 and 2002.  (Def.'s Ex. A; Ex. B-2, Onuchukwu Dep. T:117).  There is no evidence in the record, however, to indicate that Dobrzynski meant anything more than simply to ask Plaintiff what country he came from before he lived in the United States.  Plaintiff does not provide any evidence that Dobrzynski accompanied this question with an ethnic slur or other disparaging comment.  In addition to the comments, Plaintiff points to the November 23, 2003 encounter with Dobrzynski over an uncompleted chart.  On that day, Dobrzynski was expecting a visit from an inspector from the New Jersey Department of Health.  In preparation, he requested that Plaintiff complete a refrigeration temperature graph, which listed the temperatures of various medicines stored in a refrigerated compartment.  Plaintiff alleges that when he refused to comply

---

[1] In Plaintiff's responsive brief, Plaintiff alleges, for the first time, that he was suspended for a three-day period in June of 2004, after he refused to cover a shift for an absent co-worker at Dobrzynski's request.  (Pl.'s Br. in Opp. 4).  Since these allegations were not raised in either the EEOC Charge of Discrimination or Plaintiff's Complaint submitted to this Court, they will not be addressed in connection with his claims for harassment or retaliation.  Pennsylvania ex. rel. Zimmerman v. Pepsico., Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984), cert. denied, 470 U.S. 1054 (1984)).

with Dobrzynski's request with respect to the days which he did not work, Dobrzynski became upset and yelled at Plaintiff to complete the chart in its entirety "right now." (Def.'s Ex. B-2, Onuchukwu Dep. T:134). Plaintiff brought this incident to the attention of Jeanne Mulkeen in SPUH's human resources department, and requested that someone speak with Dobrzynski to ensure that a similar outburst would not happen again. Finally, Plaintiff alleges that a typographical error on a bottle of medication was intentionally created by Dobrzynski to harass Plaintiff. On September 20, 2003, Plaintiff discovered that the label on the outside of one of the containers of Ichthammol ointment contained the words "ICHTHANOL OINT (BLACK SLAVE)." (Def.'s Ex. F). Plaintiff maintains that Dobrzynski was the only person in the department who had access to, and was responsible for, entering medicine labels into the hospital's database. (Def.'s Ex. B-2, Onuchukwu Dep. T:115).

      Viewing all facts and reasonable inferences in a light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to produce evidence to create a sufficient issue of material fact on the claim of harassment based upon his national origin. It is settled law that "[d]iscourtesy or rudeness," and "simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The facts of record do not present a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [Plaintiff's] employment and create an abusive working environment." Abramson, 260 F.3d at 278-79 (quoting Harris, 510 U.S. at 2). While perhaps obnoxious, there is nothing to suggest that the isolated outburst on

November 24, 2003, was related to any discriminatory motive.[2]  Furthermore, Dobrzynski's questioning where Plaintiff "came from" on "numerous occasions" and a "couple of times," are not pervasive or regular, and amount to merely offhand comments, not rising to the level of objective severity.  Though the Court does not question that Plaintiff may not have appreciated Dobrzynski's questions or comments, it is more difficult to agree that they can serve as the basis for a Title VII claim.  Courts have repeatedly cautioned would-be plaintiffs that Title VII is not "'a general civility code for the American workplace.'"  Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998)).  The mere contention that Plaintiff felt uncomfortable when his supervisor on occasion asked where he was from, is not enough to satisfy the objective standard of severity.  "[S]ubjective reaction to the discrimination is not enough.  [The plaintiff] must also show an objectively hostile work environment."  Jensen, 435 F.3d at 451.  A reasonable trier of fact would not find that these actions are "so objectively offensive as to alter the 'conditions'" of Plaintiff's employment."  Oncale, 523 U.S. at 81.  Furthermore, there is nothing in the record to indicate that the misprinted medication label was intentional, or anything more than an inadvertent error.  It is uncontroverted that the medication at issue, Ichthammol ointment, was commonly referred to as "Black Salve."

---

[2]Moreover, Plaintiff could not rely on these statements, since Defendants have met the affirmative defense standard outlined by the Supreme Court in Faragher, 524 U.S. at 807 (holding that "[t]he [affirmative] defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."); see also Burlington Indus. v. Ellerth, 524 U.S. 742 (1998).  Plaintiff has acknowledge that he received information regarding the grievance procedures at SPUH.  (Def.'s Ex. B-2, Onuchukwu Dep. T:61).  However, Plaintiff did not communicate these comments to anyone in the company.  Accordingly, Plaintiff cannot rely on these alleged statements in support of a hostile work environment claim.

The accurate spelling of the medicine is only two letters off, and the label could also be construed as a harmless typographic error. Further, there is nothing in the record to indicate that a similar occurrence took place again. This conduct, alone, cannot support Plaintiff's claim that he was subjected to harassment by Dobrzynski based on his national origin.

In view of all of the foregoing, the Court will grant Defendant's motion for summary judgment on Plaintiff's harassment claim because Plaintiff fails to present sufficient evidence that the Dobrzynski's conduct towards Plaintiff constituted severe or pervasive harassment sufficient to maintain an actionable claim.

**B.     Retaliation under Title VII**

Plaintiff alleges that Defendant also retaliated against him in violation of Title VII, for filing prior internal complaints with SPUH. In order to set forth a claim for unlawful retaliation under Title VII, a plaintiff must produce evidence that: (1) the plaintiff engaged in activity protected by Title VII; (2) the plaintiff's employer took an adverse employment action against the plaintiff either after or contemporaneous with her protected activity; and (3) a causal connection exists between that adverse employment action and the protected activity. Abramson, 260 F.3d at 286. In the present matter, Plaintiff points to two occurrences which form the basis of his retaliation claim. They are: (1) his complaint to Tony Costabile in 2001 regarding certification pay; and (2) his complaint to Jeannie Mulkeen on November 24, 2003, with regard to Plaintiff's encounter with Dobrzynski the day before. (Def.'s Ex. B-2, Onuchukwu Dep. T:60-61). Although not clear from Plaintiff's submissions or his testimony, it appears that Plaintiff contends that the incidents involving Dobrzynski serve as retaliation for prior complaints regarding certification pay. In addition, Plaintiff alleges that Defendant's failure to hire him for

the purchasing department positions of Operating Room Materials and Specialist Pharmacy Buyer, constituted retaliation for prior complaints. Each is addressed in turn.

    **1.**    **Encounters with Dobrzynski**

Section 704(a) of Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Accordingly, in order for Plaintiff to have engaged in a protected activity under Title VII, he must demonstrate that his complaints about the certification pay concerned discrimination on the basis of race, color, sex, religion, national origin, or some other statutorily enumerated basis. In January 2001, Plaintiff noticed that the certification pay he received was issued separately from his base salary. The certification pay for the new hires, by contrast, was included in their base salary. Plaintiff brought this discrepancy to the attention of John Dimatteo, a pharmacy manager, and John Grangeia, Dimatteo's supervisor. Plaintiff did not, however, state or otherwise indicate to them that he was treated differently based on his national origin. (Def.'s Ex. B-2, Onuchukwu Dep. T:103-104). It was not until after Plaintiff filed the EEOC Charge of Discrimination, that he expressed his belief that he was being treated differently because he was Nigerian. (Id.). Plaintiff testified as follows:

> Q:    You told someone that the failure to incorporate the $2 per hour certification pay in the base pay, which you just got done testifying, applied both to you and to all the other technicians, none of whom were Nigerian, that was done to all of you because were you were [sic] Nigerian. Is that what you complained about? You didn't say that, did you?

> A: I didn't say – well, I – soon after Ben [Dobrzynski] started harassing me is when I – in my EEO chart, that's when I mentioned because I am Nigerian.

(Def.'s Ex. B-2, Onuchukwu Dep. T:103). Plaintiff, therefore, did not engage in protected activity with respect to his 2001 complaint pertaining to certification pay. Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 619 (D.N.J. 1998) ("[P]laintiff is unable to show that she was engaged in a protected activity, and she can not satisfy the prima facie elements of a retaliatory discharge claim." ). Thus, Plaintiff fails to satisfy the first element of the prima facie case, and for this reason alone, Plaintiff's Complaint cannot withstand summary judgment on his Title VII retaliation claim.

Even assuming, Plaintiff was engaged in protected activity, he has not demonstrated that SPUH, in its role as employer, took an adverse employment action against Plaintiff. Plaintiff appears to allege that Defendant engaged in an adverse employment action based on Dobrzynski's conduct towards Plaintiff. It is well settled that an adverse employment action "alters the employee's compensation, terms, conditions, or privileges of employment." Cortes v. Univ. of Med. & Dentistry, 391 F. Supp.2d 298, 312 (D.N.J. 2005) (citations omitted). "[N]ot everything that makes an employee unhappy 'qualifies as [an adverse employment action], for [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal citations omitted). The allegations involving Dobrzynski – including, the alleged comments in 2001 and 2002, the misspelled medication label discovered in September of 2003, and the encounter over the temperature

refrigeration graph in November of 2003 – clearly do not constitute a cognizable tangible adverse employment action.  Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's retaliation claim as it pertains to Dobrzyski's actions towards Plaintiff.[3]

### 2. Failure to Hire

Plaintiff also maintains that Defendant's failure to hire him for the purchasing department positions constituted retaliation for prior complaints.  In January 2004, Plaintiff applied for the position of Operating Room Materials Specialist at SPUH, but was not offered this position.  Instead, SPUH hired another individual, who was previously employed by Robert Wood Johnson Hospital in a virtually identical position since 1997.  Additionally, Plaintiff applied for the position of Pharmacy Buyer in the Spring of 2004.  Plaintiff was not hired on this occasion either.  The position was subsequently filled by an individual who had previously worked as a pharmacy buyer for six years at another hospital.[4]

Defendant argues that Plaintiff fails to establish a prima facie case of retaliation because Plaintiff's internal complaints were not protected activities.  This Court agrees.  The prior internal complaints upon which Plaintiff's claim of retaliation are based include the 2001 internal complaint pertaining to certification pay and Plaintiff's internal complaint on November 24, 2003 regarding Dobrzynski's conduct in connection the refrigerator temperature graph.  For the

---

[3] In light of Plaintiff's clear failure meet his burden of establishing a prima facie case of retaliation, the Court does not find it necessary to proceed to the burden-shifting analysis under McDonnell Douglas.

[4] In his deposition, Plaintiff made reference to other positions which he allegedly applied for but did not receive. (Def.'s Ex. B-1, Onuchukwu Dep. T:13-14).  However, Plaintiff did not provide detail on these other positions; nor are they discussed in either the EEOC Charge or in the Complaint.

reasons already discussed, Plaintiff's internal complaint to Dimatteo and Grangeia regarding certification pay does not constitute protected activity within the meaning of Title VII because Plaintiff did not state or otherwise indicate to them that he was treated differently based on his national origin. Similarly, Plaintiff's complaint to Jeanne Mulkeen on November 24, 2003 regarding Dobrzynski's conduct the day before also fails to constitute protected activity within the meaning of Title VII. Plaintiff did not, at that time, advise Mulkeen that he believed that SPUH's activities violated any law, rule, or regulation, or that he was treated differently based on his national origin. On this point, Plaintiff testifies:

> Q: About you interaction wit Mr. Dobrzynski. Did you talk to anybody else other than - -
> A: I don't recall.
> Q: But you went to Jan Mulkeen at some point?
> A: Correct.
> Q: What did you tell her?
> A: I explained what happened and I was upset. And I asked her to please have someone speak to him about this. I don't want it to happen again. And she set up a meeting.

(Def.'s Ex. B-2, Onuchukwu Dep. T:136). Plaintiff, therefore, has not shown that he engaged in protected activity based on his failure to take any steps to complain or report, at the time, that he was being treated differently based on his national origin. Therefore, Plaintiff fails to satisfy a prima facie case of retaliation with respect to Plaintiff's allegations of a failure to hire.

Even if Plaintiff could demonstrate that he engaged in protected activity, he cannot establish a casual connection between the prior complaints and the alleged adverse employment decision by Defendant to decline to hire him for the purchasing department positions. Causation may be demonstrated by circumstantial evidence "'sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" Kachmar v. SunGard Data Sys.,

Inc., 109 F.3d 173, 177 (3d Cir. 1997) (quoting Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)).  Plaintiff has offered no evidence to show that the individuals involved in the hiring process had any knowledge of Plaintiff's prior complaints.  Therefore, Plaintiff fails to make out a prima facie case of retaliation as it relates to a failure to promote, and the Court grants summary judgment to Defendant on this claim.[5]

## CONCLUSION

For the reasons set forth above, Defendant St. Peter's University Hospital's motion for summary judgment [Docket # 11] is GRANTED as against Plaintiff Kingsley Onuchukwu.

An appropriate order follows.


DATED: August 28, 2006                               s/ Jose L. Linares
                                                    United States District Judge

---

[5] As such, the Court need not apply the McDonnell Douglas burden-shifting analysis to the facts of this case.